**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

CATHERINE LYMAN,

          Plaintiff,

    v.

HUBSPOT, INC.,

          Defendant.

Case No.: 1:25-cv-00321-LM-AJ

**DEFENDANT HUBSPOT INC.'S AMENDED ANSWER AND AFFIRMATIVE AND
OTHER DEFENSES TO PLAINTIFF'S COMPLAINT**

Defendant HubSpot, Inc. ("Defendant" or "HubSpot"), by and through its attorneys, and

pursuant to Rules 8 and 12 of the Federal Rules of Civil Procedure, answers the Complaint with

Jury Demand (Doc. No. 1, "Complaint") filed by Plaintiff Catherine Lyman ("Plaintiff") as

follows:

**Summary of Case**

HubSpot denies the allegations in the "Summary of Case" section of the Complaint and

specifically denies committing any alleged unlawful acts giving rise to Plaintiff's claims or the

relief and damages she seeks in this action.

**PARTIES**

**PARAGRAPH NO. 1:**

Plaintiff Catherine Lyman ("Mrs. Lyman") resides at 5 Washington Drive, Brentwood
New Hampshire 03833.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or

falsity of Plaintiff's allegations in Paragraph No. 1 of the Complaint and, therefore, denies same.

321392726v.2

**PARAGRAPH NO. 2:**

She worked in and from New Hampshire for HubSpot, Inc., 2 Canal Park, Cambridge Massachusetts 02141 referred to herein as either HubSpot, "Defendant", or "Company."

**ANSWER:**

HubSpot admits that it employed Plaintiff and that its principal place of business is located at 2 Canal Park, Cambridge, Massachusetts 02141. HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's remaining allegations in Paragraph No. 2 of the Complaint and, therefore, denies same.

**JURISDICTION AND VENUE**

**PARAGRAPH NO. 3:**

Mrs. Lyman filed a Charge of Discrimination with the New Hampshire Human Rights Commission on February 19, 2025 that was dually filed with the Equal Employment Opportunity Commission.

**ANSWER:**

HubSpot admits that Plaintiff filed a charge of discrimination against HubSpot with the New Hampshire Commission for Human Rights, FEPA Charge No. EPSO(R) 0185-25, on or about February 19, 2025, which was dually filed with the U.S. Equal Employment Opportunity Commission, EEOC Charge No. 16D-2025-00115. HubSpot denies the remaining allegations in Paragraph No. 3 of the Complaint.

**PARAGRAPH NO. 4:**

The New Hampshire Human Rights Commission granted a Motion to Remove on August 11, 2025.

**ANSWER:**

HubSpot admits that the Commissioner for the New Hampshire Commission for Human Rights signed an Order granting Plaintiff's Motion to Remove on July 23, 2025. HubSpot denies the remaining allegations in Paragraph No. 4 of the Complaint.

321392726v.2

**PARAGRAPH NO. 5:**

The Equal Employment Opportunity Commission (EEOC) issued a Notice of Right to Sue on August 12, 2025.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 5 of the Complaint.

**PARAGRAPH NO. 6:**

Mrs. Lyman alleges claims arising under Title VII, the Pregnant Workers Fairness Act (PWFA), RSA 354-A, and the New Hampshire common law.

**ANSWER:**

HubSpot admits that Plaintiff purports to bring discrimination and retaliation claims against HubSpot under Title VII, the PWFA, RSA 354-A, and the New Hampshire common law, but denies committing any alleged unlawful acts giving rise to Plaintiff's claims.

**PARAGRAPH NO. 7:**

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question).

**ANSWER:**

HubSpot admits that jurisdiction is proper in this Court, but denies that it engaged in any wrongdoing, denies that Plaintiff is entitled to any relief whatsoever, and denies the remaining allegations in Paragraph No. 7 of Plaintiff's Complaint.

**PARAGRAPH NO. 8:**

Venue is proper as Mrs. Lyman worked in and the claims arose in New Hampshire.

**ANSWER:**

HubSpot admits that venue is proper in this Court, but denies that it engaged in any wrongdoing, denies that Plaintiff is entitled to any relief whatsoever, and denies the remaining allegations in Paragraph No. 8 of Plaintiff's Complaint.

321392726v.2

## FACTUAL ALLEGATIONS

**PARAGRAPH NO. 9:**

On October 21, 2014 HubSpot offered Mrs. Lyman the position of Support Engineer.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 9 of the Complaint.

**PARAGRAPH NO. 10:**

She accepted.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 10 of the Complaint.

**PARAGRAPH NO. 11:**

She started work on November 3, 2014.

**ANSWER:**

HubSpot admits that Plaintiff began her employment with HubSpot on November 3, 2014. HubSpot denies the remaining allegations in Paragraph No. 11 of the Complaint.

### *EIGHT (8) Promotions in Ten (10) Years*

**PARAGRAPH NO. 12:**

Over ten years of employment, HubSpot promoted Mrs. Lyman eight (8) times.

**ANSWER:**

HubSpot admits that Plaintiff was employed by HubSpot from November 3, 2014 through November 14, 2024. HubSpot denies the remaining allegations in Paragraph No. 12 of the Complaint.

**PARAGRAPH NO. 13:**

She started as a Support Engineer.

4

**ANSWER:**

HubSpot admits that, at the time Plaintiff began her employment with HubSpot, her job title was "Support Engineer." HubSpot denies the remaining allegations in Paragraph No. 13 of the Complaint.

**PARAGRAPH NO. 14:**

In September 2015, she became a Senior Support Engineer and Team Lead.

**ANSWER:**

HubSpot admits that, effective October 1, 2015, Plaintiff assumed the role of "Senior Support Engineer Team Lead." HubSpot denies the remaining allegations in Paragraph No. 14 of the Complaint.

**PARAGRAPH NO. 15:**

In December 2015, she became an Implementation Specialist.

**ANSWER:**

HubSpot admits that, effective December 1, 2015, Plaintiff assumed the role of "Implementation Specialist." HubSpot denies the remaining allegations in Paragraph No. 15 of the Complaint.

**PARAGRAPH NO. 16:**

In February 2017, HubSpot promoted her to Implementation Specialist Level 2.

**ANSWER:**

HubSpot admits that, effective January 1, 2017, Plaintiff received an in-line promotion to "Implementation Specialist II." HubSpot denies the remaining allegations in Paragraph No. 16 of the Complaint.

**PARAGRAPH NO. 17:**

In May 2017, HubSpot promoted her to Inbound Consultant.

321392726v.2

**ANSWER:**

HubSpot admits that, effective May 1, 2017, Plaintiff assumed the role of "Inbound Consultant." HubSpot denies the remaining allegations in Paragraph No. 17 of the Complaint.

**PARAGRAPH NO. 18:**

In July 2018, she became an Inbound Consultant Level 2.

**ANSWER:**

HubSpot admits that, effective July 1, 2018, Plaintiff assumed the role of "Inbound Consultant II." HubSpot denies the remaining allegations in Paragraph No. 18 of the Complaint.

**PARAGRAPH NO. 19:**

In September 2019, HubSpot promoted her to Senior Inbound Consultant.

**ANSWER:**

HubSpot admits that, effective July 1, 2019, Plaintiff received an in-line promotion to "Senior Inbound Consultant." HubSpot denies the remaining allegations in Paragraph No. 19 of the Complaint.

**PARAGRAPH NO. 20:**

In July 2021, she became an Associate Product Manager.

**ANSWER:**

HubSpot admits that, effective July 28, 2021, Plaintiff assumed the role of "Associate Product Manager." HubSpot denies the remaining allegations in Paragraph No. 20 of the Complaint.

**PARAGRAPH NO. 21:**

In September 2022, HubSpot promoted her to Product Manager.

321392726v.2

**ANSWER:**

HubSpot admits that, effective September 15, 2022, Plaintiff received an in-line promotion to "Product Manager." HubSpot denies the remaining allegations in Paragraph No. 21 of the Complaint.

**PARAGRAPH NO. 22:**

Compensation for this last job at HubSpot was at least five (5) times the amount of her initial starting salary.

**ANSWER:**

HubSpot admits that Plaintiff's compensation in the Product Manager role was higher than the compensation she received in the Support Engineer role. HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations concerning her assessment of the mathematical differences in compensation she received in these roles and, therefore, denies same.

*Bonuses and Awards*

**PARAGRAPH NO. 23:**

HubSpot recognized Mrs. Lyman's excellence with bonuses and awards.

**ANSWER:**

HubSpot admits that Plaintiff received additional pay during the course of her employment with HubSpot in the form of bonuses and stock payments. HubSpot denies the remaining allegations in Paragraph No. 23 of the Complaint.

**PARAGRAPH NO. 24:**

In April 2019, based on an Annual Compensation Review, HubSpot provided Mrs. Lyman a Restricted Stock Unit (RSU) award of 120 shares.

321392726v.2

**ANSWER:**

HubSpot admits that, pursuant to HubSpot's 2014 Stock Option and Incentive Plan, 120 Restricted Stock Units were issued to Plaintiff on April 1, 2019. HubSpot denies the remaining allegations in Paragraph No. 24 of the Complaint.

**PARAGRAPH NO. 25:**

In April 2020, based on an Annual Compensation Review, HubSpot provided Mrs. Lyman a 10% salary increase.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 25 of the Complaint.

**PARAGRAPH NO. 26:**

In April 2021, based on an Annual Compensation Review, HubSpot provided Mrs. Lyman a 5% salary increase.

**ANSWER:**

HubSpot admits that Plaintiff received a salary increase in April 2021 as part of the Annual Compensation Review process. HubSpot denies the remaining allegations in Paragraph No. 26 of the Complaint.

**PARAGRAPH NO. 27:**

In April 2022, based on an Annual Compensation Review, HubSpot provided Mrs. Lyman a 23% salary increase.

**ANSWER:**

HubSpot admits that Plaintiff received a salary increase in April 2022 as part of the Annual Compensation Review Process. HubSpot denies the remaining allegations in Paragraph No. 27 of the Complaint.

**PARAGRAPH NO. 28:**

In April 2023, based on an Annual Compensation Review, HubSpot provided Mrs. Lyman a 10% salary increase and an RSU award of 220 shares.

8

**ANSWER:**

HubSpot admits that, pursuant to HubSpot's 2014 Stock Option and Incentive Plan, 220

Restricted Stock Units were issued to Plaintiff on April 3, 2023. HubSpot also admits that

Plaintiff received a salary increase in April 2023 as part of the Annual Compensation Review

process. HubSpot denies the remaining allegations in Paragraph No. 28 of the Complaint.

**PARAGRAPH NO. 29:**

In May 2024—a time she was out on parental leave—HubSpot provided Mrs. Lyman a
10% salary increase and an RSU award of 39 shares. This was from the 2024 Annual
Compensation Review and was based on Catherine's latest performance review from January
2024.

**ANSWER:**

HubSpot admits that, pursuant to HubSpot's 2014 Stock Option and Incentive Plan, 39

Restricted Stock Units were issued to Plaintiff on May 1, 2024. HubSpot also admits that, at the

time these Restricted Stock Units were issued, Plaintiff was on parental leave. In addition,

HubSpot admits that Plaintiff received a salary increase in May 2024 as part of the Annual

Compensation Review process. HubSpot denies the remaining allegations in Paragraph No. 29 of

the Complaint.

*Exemplary Performance Reviews*

**PARAGRAPH NO. 30:**

HubSpot had a written policy requiring that each employee receive written performance
review for each year of employment.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 30 of the Complaint.

**PARAGRAPH NO. 31:**

She did not receive a review, however, for each year.

9

321392726v.2

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 31 of the Complaint.

**PARAGRAPH NO. 32:**

As her promotions reflect, the reviews she received were excellent.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 32 of the Complaint.

**PARAGRAPH NO. 33:**

In her October 2017 review, her manager identified that "Our community is benefiting from your efforts tremendously. Your expertise delivered a distinctive manner is highly appreciated. You are contributing to something great. Thank you."

**ANSWER:**

HubSpot admits that Plaintiff's 2017 October Performance Review contained feedback from Plaintiff's manager, which includes the quoted comments alleged in Paragraph No. 33 of the Complaint. HubSpot denies the remaining allegations in Paragraph No. 33 of the Complaint.

**PARAGRAPH NO. 34:**

Six months later, her 2018 February review rated her as "Often Exceeds Expectations" and noted that "Kit has shown remarkable commitment to the speedy and thorough implementation of feedback" as well as being an "incredible resource" to other employees.

**ANSWER:**

HubSpot admits that Plaintiff received an "Often Exceeds Expectations" rating in her 2018 February Performance Review. HubSpot also admits that Plaintiff's 2018 February Performance Review contained feedback from Plaintiff's manager, which includes the quoted comments alleged in Paragraph No. 34 of the Complaint. HubSpot denies the remaining allegations in Paragraph No. 34 of the Complaint.

**PARAGRAPH NO. 35:**

In July 2018, her manager noted that "nearly across the board, Kit is at the 'Skilled' level for all of her core competencies."

10

**ANSWER:**

HubSpot admits that Plaintiff's 2018 July Performance Review contained feedback from her manager, which included the quoted comments alleged in Paragraph No. 35 of the Complaint. HubSpot denies the remaining allegations in Paragraph No. 35 of the Complaint.

**PARAGRAPH NO. 36:**

By October 2018, she had become "an integral ambassador for our program in the Portsmouth office" by "making people excited to join the team", being an "excellent resource to the candidates", and being a "tenacious cheerleader in support of her colleagues."

**ANSWER:**

HubSpot admits that Plaintiff's 2018 October Performance Review contained feedback from her manager, but denies that the allegations in Paragraph No. 36 of the Complaint accurately capture those comments. HubSpot denies the remaining allegations in Paragraph No. 36 of the Complaint.

**PARAGRAPH NO. 37:**

A welcome email that she sent to a new hire was shared throughout the Company and identified as a model for communication with new hires.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 37 of the Complaint.

**PARAGRAPH NO. 38:**

In February and July 2019, her Manager again rated her as "4 — Often Exceeds Expectations"

**ANSWER:**

HubSpot admits that Plaintiff received a "4-Often Exceeds Expectations" rating in her 2019 February Performance Review and 2019 July Performance Review. HubSpot denies the remaining allegations in Paragraph No. 38 of the Complaint.

11

**PARAGRAPH NO. 39:**

She helped closed the biggest business deal for the Global Professional Services Team for the 2nd half of 2019.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's vague allegations contained in Paragraph No. 39 of the Complaint and, therefore, denies same.

**PARAGRAPH NO. 40:**

Her manager identified that she had a "great quarter" while continuing to be a "great ambassador in the [Portsmouth] office" and a "tremendous asset to our customers."

**ANSWER:**

HubSpot admits that Plaintiff's 2019 February Performance Review contained feedback from her manager, which included the quoted comments alleged in Paragraph No. 40 of the Complaint. HubSpot denies the remaining allegations in Paragraph No. 40 of the Complaint.

**PARAGRAPH NO. 41:**

Her "peer feedback" included that she is "a beautiful soul" and "incredibly patient as a mentor."

**ANSWER:**

HubSpot admits that Plaintiff's 2019 February Performance Review contained feedback from peers, which included the quoted comments alleged in Paragraph No. 41 of the Complaint. HubSpot denies the remaining allegations in Paragraph No. 41 of the Complaint.

**PARAGRAPH NO. 42:**

Her reviews for 2020 reflect that she was an "incredible consultant, team member, peer, and human", that she "truly embodied H.E.A.R.T.", and "delivered and exceptional experience" for customers. [FN 1]: HubSpot prides itself on the importance of peer feedback as an important evaluation of employee performance.

12

**ANSWER:**

HubSpot admits that Plaintiff's 2020 February Performance Review contained feedback

from her manager, but denies that the allegations in Paragraph No. 42 of the Complaint

accurately capture those comments. HubSpot denies the remaining allegations in Paragraph No.

42 of the Complaint, including the information alleged in Footnote No. 1.

**PARAGRAPH NO. 43:**

She completed "another stellar period" in late 2020 when she had "the highest RR for all
of Services in Q4."

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 43 of the Complaint.

**PARAGRAPH NO. 44:**

In January 2022, she was again ranked as "4 — Often Exceeds Expectations" with her
Manager identifying that "it's a privilege to work with you and see you already flourishing in the
APM role."

**ANSWER:**

HubSpot admits that Plaintiff received a "4-Often Exceeds Expectations" rating in her

2022 January Performance Review. HubSpot also admits that Plaintiff's 2022 January

Performance Review contained feedback from Plaintiff's manager, which included the quoted

comments alleged in Paragraph No. 44 of the Complaint. HubSpot denies the remaining

allegations in Paragraph No. 44 of the Complaint.

**PARAGRAPH NO. 45:**

Her review for the first half of 2022 was "4 — Often Exceeds Expectations" and she was
identified as advancing from a "great reporting PM to a true leader in the space."

**ANSWER:**

HubSpot admits that Plaintiff received a "4-Often Exceeds Expectations" rating in her H2

2022 Performance Review. HubSpot also admits that Plaintiff's H2 2022 Performance Review

321392726v.2

contained feedback from her manager, but denies that the allegations in Paragraph No. 45 of the

Complaint accurately capture those comments. HubSpot denies the remaining allegations in

Paragraph No. 45 of the Complaint.

**PARAGRAPH NO. 46:**

For 2023, her reviews for April 2023 to August 2023 identifies that she "continue[s] to shine in getting projects over the finish line, completed on time, and your team continues to take on an impressive amount of work each quarter. [FN 2]: In 2023, the company moved to a "high-performance culture" where they no longer gave out 4s unless someone was just about to be promoted. From this point forward, a "3 — Meets HubSpot high expectations" was deemed as high performance.

**ANSWER:**

HubSpot admits that Plaintiff's H2 2023 Performance Review Lite contained feedback

from her manager, which included the quoted comments alleged in Paragraph No. 46 of the

Complaint. HubSpot denies the remaining allegations in Paragraph No. 46 of the Complaint,

including the information alleged in Footnote 2.

**PARAGRAPH NO. 47:**

As an evaluation of herself, Mrs. Lyman noted that "I have never felt so confident coming into a new year than this one."

**ANSWER:**

HubSpot admits that Plaintiff's H1 2024 Performance Review contained a self-

evaluation, which included the quoted comments alleged in Paragraph No. 47 of the Complaint.

HubSpot denies the remaining allegations in Paragraph No. 47 of the Complaint.

**PARAGRAPH NO. 48:**

Her Manager responded, "I agree that you're set up to have a really impactful 2024. Your team's focus is in the right place."

321392726v.2

**ANSWER:**

HubSpot admits that Plaintiff's H1 2024 Performance Review contained feedback from her manager, which included the quoted comments alleged in Paragraph No. 48 of the Complaint. HubSpot denies the remaining allegations in Paragraph No. 48 of the Complaint.

*Notice of Parental Leave*

**PARAGRAPH NO. 49:**

Everything changed when Mrs. Lyman took parental leave.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 49 of the Complaint.

**PARAGRAPH NO. 50:**

Mrs. Lyman identifies as lesbian and is married.

**ANSWER:**

Upon information and belief, HubSpot admits the allegations in Paragraph No. 50 of the Complaint.

**PARAGRAPH NO. 51:**

In late 2023, she notified her manager, Ms. Griffith, that she was pregnant.

**ANSWER:**

HubSpot admits that Plaintiff notified Ms. Griffith that she was pregnant. HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's remaining allegations in Paragraph No. 51 of the Complaint and, therefore, denies same.

**PARAGRAPH NO. 52:**

In early 2024, she formally notified HubSpot People Operations that she would be taking parental leave.

15

321392726v.2

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 52 of the Complaint.

**PARAGRAPH NO. 53:**

Ms. Griffith requested that she provide a Parental Leave Google Document outlining the status of all team projects, individual team member responsibilities, team communication channels, and team links/resources.

**ANSWER:**

HubSpot admits that Plaintiff provided her former manager, Meaghan Griffith (Group Product Manager), with a document titled "Parental Leave Coverage for Kit Lyman" in anticipation of Plaintiff's parental leave. HubSpot denies the remaining allegations in Paragraph No. 53 of the Complaint.

**PARAGRAPH NO. 54:**

This was a roadmap of the team projects to be used as a resource guide for the team — and Ms. Griffith — while Mrs. Lyman was out.

**ANSWER:**

HubSpot admits that Plaintiff provided Ms. Griffith with a document titled "Parental Leave Coverage for Kit Lyman" before beginning her parental leave. HubSpot denies the remaining allegations in Paragraph No. 54 of the Complaint.

**PARAGRAPH NO. 55:**

Mrs. Lyman completed this in mid-March.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations contained in Paragraph No. 55 of the Complaint and, therefore, denies same.

**PARAGRAPH NO. 56:**

She reviewed it in-depth with Ms. Griffith in late March.

16

321392726v.2

**ANSWER:**

HubSpot admits that Plaintiff and Ms. Griffith met to review the document titled "Parental Leave Coverage for Kit Lyman" before Plaintiff began her parental leave. HubSpot denies the remaining allegations in Paragraph No. 56 of the Complaint.

**PARAGRAPH NO. 57:**

Ms. Griffith praised the Document for being exceedingly thorough.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 57 of the Complaint.

**PARAGRAPH NO. 58:**

At or around this time, Ms. Weigandt, a Product Designer, provided Ms. Griffith peer feedback about Mrs. Lyman.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 58 of the Complaint.

**PARAGRAPH NO. 59:**

She identified that Mrs. Lyman "has gone above and beyond this quarter in prepping everything for [Mrs. Lyman's] team before she goes out on parental leave. I've never had a [product manager] who would put in this much time and effort to making sure that the team is prepped like this. [Mrs. Lyman] is truly remarkable and I'm so appreciative of her."

**ANSWER:**

Respondent admits that Brittany Weigandt provided feedback to Ms. Griffith regarding Plaintiff, but denies that the allegations in Paragraph No. 59 of the Complaint accurately capture those comments. HubSpot denies the remaining allegations in Paragraph No. 59 of the Complaint.

**PARAGRAPH NO. 60:**

Ms. Griffith responded to Ms. Weigandt's feedback that "[Mrs. Lyman] was very organized in getting ready for her leave, super appreciate that."

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 60 of the Complaint.

*Parental Leave Doc Available In Slack*

**PARAGRAPH NO. 61:**

Mrs. Lyman linked the Parental Leave Google Document in Slack, an internal messaging software HubSpot used for communication.

**ANSWER:**

HubSpot admits that Plaintiff posted the document titled "Parental Leave Coverage for Kit Lyman" to HubSpot's Slack channel. HubSpot denies the remaining allegations in Paragraph No. 61 of the Complaint.

**PARAGRAPH NO. 62:**

It was accessible throughout her leave.

**ANSWER:**

HubSpot admits that the document titled "Parental Leave Coverage for Kit Lyman" was accessible to those who had the particular link to the document. HubSpot denies the remaining allegations in Paragraph No. 62 of the Complaint.

**PARAGRAPH NO. 63:**

It was accessible by all team members, indeed by all HubSpot employees with Slack access.

**ANSWER:**

HubSpot admits that the document titled "Parental Leave Coverage for Kit Lyman" was accessible to those who had the particular link to the document. HubSpot denies the remaining allegations in Paragraph No. 63 of the Complaint.

**PARAGRAPH NO. 64:**

This particularly included Ms. Griffith who requested the Document.

321392726v.2

**ANSWER:**

HubSpot admits that Ms. Griffith had access to the document titled "Parental Leave Coverage for Kit Lyman." HubSpot denies the remaining allegations in Paragraph No. 64 of the Complaint.

**PARAGRAPH NO. 65:**

Google documents track viewing history, such that any time anyone viewed the Document, it logged their access.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations regarding her assertion about how "Google documents track viewing history" and, therefore, denies same. HubSpot denies the remaining allegations in Paragraph No. 65 of the Complaint.

**PARAGRAPH NO. 66:**

The log identified who had viewed the Document and when they viewed it.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations contained in Paragraph No. 66 of the Complaint and, therefore, denies same.

**PARAGRAPH NO. 67:**

The log shows that Ms. Griffith never accessed the Document during Mrs. Lyman's leave, despite being the primary coverage for Mrs. Lyman.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations contained in Paragraph No. 67 of the Complaint and, therefore, denies same.

321392726v.2

**PARAGRAPH NO. 68:**

Leave began on April 8, 2024.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 68 of the Complaint.

**PARAGRAPH NO. 69:**

Mrs. Lyman had her first child on April 9, 2024.

**ANSWER:**

Upon information and belief, HubSpot admits the allegations in Paragraph No. 69 of the

Complaint.

**PARAGRAPH NO. 70:**

She was out of the office for 16 weeks (from April 8 to July 28, 2024).

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 70 of the Complaint.

*Notified of Planned Negative Review*

**PARAGRAPH NO. 71:**

On the third day she returned from leave, July 31, 2024, Ms. Griffith informed her that because her team "underperformed" when she was out on leave, she would be receiving a "2 - Needs improvement" in the August performance review period and would be receiving a "growth plan."

**ANSWER:**

HubSpot admits that Ms. Griffith provided Plaintiff with feedback regarding her

performance on July 31, 2024, and notified Plaintiff that she would be providing her with a

growth plan. HubSpot also admits that Ms. Griffith informed Plaintiff that she would be

receiving a "2-Needs Improvement" performance rating in the upcoming performance review

cycle. HubSpot denies the remaining allegations in Paragraph No. 71 of the Complaint.

321392726v.2

**PARAGRAPH NO. 72:**

As a basis for this assessment, Ms. Griffith provided only vague and general statements like "lack of vision," "iterative product development", and "inadequate customer insight."

**ANSWER:**

HubSpot admits that Plaintiff received performance feedback from Ms. Griffith on July 31, 2024.  HubSpot denies the remaining allegations in Paragraph 72 of the Complaint.

**PARAGRAPH NO. 73:**

These were highly subjective.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 73 of the Complaint.

**PARAGRAPH NO. 74:**

They also were non-quantifiable assessments.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 74 of the Complaint.

**PARAGRAPH NO. 75:**

Moreover, each of these was identified as a strength in Mrs. Lyman's many preceding evaluations which led to promotions, bonuses, and raises.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 75 of the Complaint.

*MTW With HR - Millar*

**PARAGRAPH NO. 76:**

On August 2, 2024, Mrs. Lyman met with HR business associate, Ms. Millar.

**ANSWER:**

HubSpot admits that on August 2, 2024, Plaintiff met with Judith Millar, whose job title at the time was Associate Employee Relations Partner. HubSpot denies the remaining allegations in Paragraph No. 76 of the Complaint.

21

321392726v.2

**PARAGRAPH NO. 77:**

She advised that Ms. Griffith was subjecting her to a negative review based on her team's performance when she was out on leave.

**ANSWER:**

HubSpot admits that on August 2, 2024, Plaintiff reported general workplace concerns to Ms. Millar about the performance feedback Plaintiff received from Ms. Griffith after returning from her parental leave. HubSpot denies the remaining allegations in Paragraph No. 77 of the Complaint.

**PARAGRAPH NO. 78:**

She indicated that she felt she was being discriminated and retaliated against for taking parental leave.

**ANSWER:**

HubSpot admits that on August 2, 2024, Plaintiff reported general workplace concerns to Ms. Millar about the performance feedback Plaintiff received from Ms. Griffith after returning from her parental leave. HubSpot denies the remaining allegations in Paragraph No. 78 of the Complaint.

**PARAGRAPH NO. 79:**

Ms. Millar recommended that Mrs. Lyman attempt to "work it out" with Ms. Griffith.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 79 of the Complaint.

*Receipt of Draft Growth Plan*

**PARAGRAPH NO. 80:**

On August 5, 2024, Ms. Griffith provided a draft of a proposed growth plan.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 80 of the Complaint.

22

**PARAGRAPH NO. 81:**

It included falsified statements from peer reviews.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 81 of the Complaint.

**PARAGRAPH NO. 82:**

There was no evidence to back up the rationale of the growth plan.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 82 of the Complaint.

**PARAGRAPH NO. 83:**

On August 6, 2025, Mrs. Lyman met with Ms. Griffith to review the draft.

**ANSWER:**

HubSpot admits that on August 6, 2024, Ms. Griffith met with Plaintiff to review the growth plan document. HubSpot denies the remaining allegations in Paragraph No. 83 of the Complaint.

**PARAGRAPH NO. 84:**

As Ms. Millar had suggested, Mrs. Lyman tried to address things with Ms. Griffith.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations regarding her personal opinion and characterization of the discussions she had with Ms. Griffith during their August 6, 2024 meeting and, therefore, denies same. HubSpot denies the remaining allegations in Paragraph No. 84 of the Complaint.

**PARAGRAPH NO. 85:**

She was unsuccessful.

321392726v.2

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations regarding her personal opinion and characterization of the discussions she had with Ms. Griffith during their August 6, 2024 meeting and, therefore, denies same.

*Communication With Leave Administrator - Heard*

**PARAGRAPH NO. 86:**

On August 9, 2024, Mrs. Lyman communicated with Ms. Heard, HubSpot's Leave Administrator.

**ANSWER:**

HubSpot admits that Leaves Administrator Kyeshia Heard communicated with Plaintiff by email on August 9, 2024, and confirmed that Plaintiff's performance would only be evaluated for the period of January 1, 2024 through April 7, 2024, prior to Plaintiff taking parental leave. HubSpot denies the remaining allegations in Paragraph No. 86 of the Complaint.

**PARAGRAPH NO. 87:**

Mrs. Lyman again expressed concerns that she was being retaliated against for taking parental leave.

**ANSWER:**

HubSpot admits that on the August 12, 2024, Plaintiff sent an email to Ms. Heard concerning the performance feedback she received on July 31, 2024, after returning from her parental leave, and inquiring about whether she should continue speaking with her Human Resources Business Partner about this performance feedback. HubSpot denies the remaining allegations in Paragraph No. 87 of the Complaint.

24

321392726v.2

**PARAGRAPH NO. 88:**

Mrs. Heard confirmed in an email that Mrs. Lyman's August 2024 Performance Review only should be based on time when she was working and not, as Ms. Griffith had indicated, on time when she was out on parental leave.

**ANSWER:**

HubSpot admits that Ms. Heard communicated with Plaintiff by email on August 9, 2024, and confirmed that Plaintiff's performance would only be evaluated for the period of January 1, 2024 through April 7, 2024, prior to Plaintiff taking parental leave. HubSpot denies the remaining allegations in Paragraph No. 88 of the Complaint.

### 2nd MTW HR - Millar

**PARAGRAPH NO. 89:**

On August 14, 2024, Mrs. Lyman met a 2nd time with Ms. Millar.

**ANSWER:**

HubSpot admits that Plaintiff met with Ms. Millar on August 16, 2024. HubSpot denies the remaining allegations in Paragraph No. 89 of the Complaint.

**PARAGRAPH NO. 90:**

Mrs. Lyman advised Ms. Millar that Ms. Griffith refused to relent on providing Mrs. Lyman a "2 —Needs Improvement" rating allegedly based on the team's performance when she was out on parental leave.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 90 of the Complaint.

**PARAGRAPH NO. 91:**

Pursuant to HubSpot policy, Mrs. Lyman initiated a formal complaint.

**ANSWER:**

HubSpot admits that Plaintiff contacted Ms. Millar on August 12, 2024 to report concerns that the performance feedback she received upon her return from parental leave was

321392726v.2

discriminatory, and to initiate a formal complaint. HubSpot denies the remaining allegations in Paragraph No. 91 of the Complaint.

**PARAGRAPH NO. 92:**

In response, Ms. Millar identified that she would "investigate" the situation.

**ANSWER:**

HubSpot admits that Ms. Millar informed Plaintiff that she would investigate her reported concerns. HubSpot denies the remaining allegations in Paragraph No. 92 of the Complaint.

**PARAGRAPH NO. 93:**

Upon information and belief, Ms. Millar did not communicate or meet with any members of Ms. Lyman's team as part of her "investigation."

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 93 of the Complaint.

**PARAGRAPH NO. 94:**

Though HubSpot claimed the review was warranted based on alleged "peer reviews," Ms. Millar did not meet with the peers who allegedly provided them.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 94 of the Complaint.

**PARAGRAPH NO. 95:**

On August 23, 2024, Ms. Millar identified by email that her internal "investigation" did not substantiate Mrs. Lyman's concerns.

**ANSWER:**

HubSpot admits that on August 23, 2024, Ms. Millar notified Plaintiff by email that she completed her internal investigation of Plaintiff's reported concerns, and that her investigation did not substantiate Plaintiff's claims. HubSpot denies the remaining allegations in Paragraph No. 95 of the Complaint.

321392726v.2

*Receipt of Negative Review*

**PARAGRAPH NO. 96:**

On August 26, 2024, Mrs. Lyman formally received her negative review, rating her as "2 - Needs Improvement."

**ANSWER:**

HubSpot admits that Plaintiff received a "2-Needs Improvement" rating in her H2 2024 Performance Review Lite. HubSpot denies the remaining allegations in Paragraph No. 96 of the Complaint.

**PARAGRAPH NO. 97:**

This was based on the performance of her team while she was out on parental leave.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 97 of the Complaint.

**PARAGRAPH NO. 98:**

With the negative review, HubSpot also provided Mrs. Lyman a "growth plan."

**ANSWER:**

HubSpot admits that Plaintiff was given a growth plan by Ms. Griffith. HubSpot denies the remaining allegations in Paragraph No. 98 of the Complaint.

**PARAGRAPH NO. 99:**

This included "Specific Deliverables".

**ANSWER:**

HubSpot admits that the growth plan document Plaintiff received included a section titled, "Specific Deliverables for Growth Plan." HubSpot denies any remaining allegations in Paragraph No. 99 of the Complaint.

**PARAGRAPH NO. 100:**

This growth plan had falsified "360 peer review" excerpts.

27

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 100 of the Complaint.

**PARAGRAPH NO. 101:**

There was no evidence provided to Mrs. Lyman to substantiate the need for the growth plan.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 101 of the Complaint.

*Again, Reported Discrimination/Retaliation*

**PARAGRAPH NO. 102:**

On August 27 and 28, 2024, Mrs. Lyman communicated with the legal department about what she was experiencing including what she believed was retaliation because she took parental leave.

**ANSWER:**

HubSpot admits that Plaintiff contacted HubSpot's Legal Employment Team on August

27, 2024 and August 28, 2024. HubSpot denies the remaining allegations in Paragraph No. 102

of the Complaint.

**PARAGRAPH NO. 103:**

A representative from legal advised her that HR had never reached out to legal about the two previous complaints Mrs. Lyman had made about retaliation.

**ANSWER:**

HubSpot denies the remaining allegations in Paragraph No. 103 of the Complaint.

*Proof of Retaliation/Discrimination*

**PARAGRAPH NO. 104:**

On September 3 and 4, 2024, Mrs. Lyman discovered proof that Ms. Griffith was sabotaging her.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 104 of the Complaint.

321392726v.2

**PARAGRAPH NO. 105:**

In 2024 Capital Expenditure Reports (CapEx) were one of the key indicators HubSpot used to track each product team's performance and business impact.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 105 of the Complaint.

**PARAGRAPH NO. 106:**

Monthly Reports submitted by team managers identified the projects to which HubSpot dedicated engineering resources.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 106 of the Complaint.

**PARAGRAPH NO. 107:**

The Reports were used, in part, to justify capital investment in long-term product development.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 107 of the Complaint.

**PARAGRAPH NO. 108:**

HubSpot maintained the details of each team's monthly submission.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 108 of the Complaint.

**PARAGRAPH NO. 109:**

Mrs. Lyman was responsible for submitting the monthly CapEx Reports for her engineering team.

**ANSWER:**

HubSpot admits that, as a Product Manager, Plaintiff submitted time-related data related to Capital Expenditures for engineers with whom she worked.  HubSpot denies the remaining allegations in Paragraph No. 109 of the Complaint.

321392726v.2

**PARAGRAPH NO. 110:**

In January, February, and March 2024 she submitted her team's monthly CapEx Reports pursuant to HubSpot deadlines.

**ANSWER:**

HubSpot admits that, as a Product Manager, Plaintiff submitted time-related data related to Capital Expenditures for engineers  with whom she worked in January, February and March 2024.  HubSpot denies the remaining allegations in Paragraph No. 110 of the Complaint.

**PARAGRAPH NO. 111:**

From April through July 2024 (i.e., Mrs. Lyman's leave), Ms. Griffith was responsible for submitting the team's monthly CapEx Reports.

**ANSWER:**

HubSpot admits that Plaintiff designated Ms. Griffith as her backup for CapEx response during her parental leave.  HubSpot denies the remaining allegations in Paragraph No. 111 of the Complaint.

**PARAGRAPH NO. 112:**

Ms. Griffith did not submit the Mrs. Lyman's team's monthly CapEx Reports pursuant to HubSpot deadlines.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 112 of the Complaint.

**PARAGRAPH NO. 113:**

Submission records maintained by HubSpot for Mrs. Lyman's team for April, May, and June 2024 contained the same data as the Report that Mrs. Lyman submitted in March 2024.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 113 of the Complaint.

**PARAGRAPH NO. 114:**

HubSpot's CapEx system defaulted to the previous month's submission when a manager failed to submit a required monthly Report.

321392726v.2

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 114 of the Complaint.

**PARAGRAPH NO. 115:**

The data for April, May, and June 2024 was the same because Ms. Griffith failed to submit the actual monthly data in required monthly Reports.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 115 of the Complaint.

**PARAGRAPH NO. 116:**

Even more troubling, Ms. Griffith falsified the team's July 2024 CapEx Report to make the team's performance look worse than it actually was by making it appear that there was overuse of engineering resources.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 116 of the Complaint.

**PARAGRAPH NO. 117:**

Ms. Griffith also failed to submit nine (9) new product features Mrs. Lyman's engineering team worked on during her 16-week parental leave.

**ANSWER:**

HubSpot admits that Plaintiff submitted nine (9) new product features in September

2024.  HubSpot denies the remaining allegations in Paragraph No. 117 of the Complaint.

**PARAGRAPH NO. 118:**

Mrs. Lyman reported the failure of her manager to submit three of the monthly CapEx Reports and the falsified July 2024 CapEx Report to Nico Capone, Accounting Supervisor.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 118 of the Complaint.

**PARAGRAPH NO. 119:**

Mr. Capone was the person in the position responsible for overseeing the required monthly submission of CapEx reports.

321392726v.2

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 119 of the Complaint.

**PARAGRAPH NO. 120:**

Mr. Capone advised Mrs. Lyman that prior CapEx submissions, even falsified ones, could not be adjusted.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 120 of the Complaint.

**PARAGRAPH NO. 121:**

The inaccurate and falsified CapEx reports, therefore, remained in place.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 121 of the Complaint.

*Proof of Performance*

**PARAGRAPH NO. 122:**

Despite the foregoing, Mrs. Lyman provided Ms. Griffith a detailed account using a tracking program of the progress she made toward each growth plan deliverable.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 122 of the Complaint.

**PARAGRAPH NO. 123:**

During an October 3, 2024 Zoom conference, however, Ms. Griffith made it clear that, just like the Parental Leave Document, she had not reviewed Mrs. Lyman's submissions.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 123 of the Complaint.

**PARAGRAPH NO. 124:**

Ms. Griffith also had not completed the 360 peer reviews she had promised.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 124 of the Complaint.

**PARAGRAPH NO. 125:**

Yet, Ms. Griffith informed Mrs. Lyman that she allegedly was not meeting expectations.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 125 of the Complaint.

*Performance Improvement Plan*

**PARAGRAPH NO. 126:**

On October 15, 2024, Ms. Griffith concluded that Mrs. Lyman had not met the growth plan deliverables.

**ANSWER:**

HubSpot admits that on October 3, 2024, Plaintiff was notified by Ms. Griffith that her performance did not meet the expectations set forth in the growth plan. HubSpot denies the remaining allegations in Paragraph No. 126 of the Complaint.

**PARAGRAPH NO. 127:**

This was false.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 127 of the Complaint.

**PARAGRAPH NO. 128:**

Ms. Griffith put Mrs. Lyman onto a Performance Improvement Plan (PIP).

**ANSWER:**

HubSpot admits that Plaintiff was placed on a Performance Improvement Plan ("PIP") on October 15, 2024. HubSpot denies the remaining allegations in Paragraph No. 128 of the Complaint.

**PARAGRAPH NO. 129:**

Ms. Griffith also directed Mrs. Lyman to contact employee relations to identify if there were acceptable terms for a "mutual agreement to part ways."

321392726v.2

**ANSWER:**

HubSpot admits that at the time the PIP was issued to Plaintiff, Plaintiff was also informed that she could pursue a severance package with Employee Relations in lieu of participating in the PIP process, which is consistent with HubSpot's policies. HubSpot denies the remaining allegations in Paragraph No. 129 of the Complaint.

**PARAGRAPH NO. 130:**

Mrs. Lyman contacted employee relations which identified two severance options that purportedly would allow Mrs. Lyman to "avoid having to go through a PIP."

**ANSWER:**

HubSpot admits that Plaintiff communicated with Employee Relations regarding a possible severance package in lieu of Plaintiff's participation in the PIP process. HubSpot denies the remaining allegations in Paragraph No. 130 of the Complaint.

**PARAGRAPH NO. 131:**

It was not Mrs. Lyman's desire to end her employment.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's allegations contained in Paragraph No. 131 of the Complaint and, therefore, denies same.

**PARAGRAPH NO. 132:**

She again expressed her concerns about retaliation because she was being disciplined for her teams alleged performance while she was out on parental leave.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's vague allegations contained in Paragraph No. 132 of the Complaint and, therefore, denies same.

321392726v.2

**PARAGRAPH NO. 133:**

She also questioned why she had not received any response from HubSpot legal department.

**ANSWER:**

HubSpot is without knowledge or information sufficient to form a belief as to the truth or falsity of Plaintiff's vague allegations contained in Paragraph No. 133 of the Complaint and, therefore, denies same.

### 3 Meetings PIP

**PARAGRAPH NO. 134:**

Mrs. Lyman and Ms. Griffith met weekly to review the PIP deliverables.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 134 of the Complaint.

**PARAGRAPH NO. 135:**

Each meeting, Mrs. Lyman provided documented proof of her performance.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 135 of the Complaint.

**PARAGRAPH NO. 136:**

Other than limited comments about one document, Ms. Griffith provided no feedback.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 136 of the Complaint.

### Termination

**PARAGRAPH NO. 137:**

On November 13, 2024, Ms. Griffith notified Mrs. Lyman that HubSpot was terminating her employment.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 137 of the Complaint.

321392726v.2

**PARAGRAPH NO. 138:**

The reason Ms. Griffith identified was that "[Mrs. Lyman's] vision doc was not articulate enough and was too much of a regurgitation of the company mission."

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 138 of the Complaint.

### *Respondeat Superior*

**PARAGRAPH NO. 139:**

All action or inaction of Ms. Griffith, Ms. Millar, and other HubSpot employees or agents herein identified by name or title was within the course and scope of their employment.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 139 of the Complaint.

**PARAGRAPH NO. 140:**

All action or inaction of HubSpot employees or agents herein identified occurred because HubSpot placed these individuals into positions of power and authority which positions they used to discriminate and retaliate against Mrs. Lyman.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 140 of the Complaint.

**PARAGRAPH NO. 141:**

HubSpot provided the means and/or resources to the employees or agents herein identified and others which they used to discriminate and retaliate against Mrs. Lyman.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 141 of the Complaint.

**PARAGRAPH NO. 142:**

HubSpot is liable for the claims that arise because of the conduct alleged herein through the principle of *Respondeat Superior*.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 142 of the Complaint.

36

*Ratification*

**PARAGRAPH NO. 143:**

The defendant ratified the conduct Mrs. Lyman reported when its supervisors failed to thoroughly investigate it, failed to discipline the individual(s) who engaged in it, and terminated Mrs. Lyman's employment. This amounted to condonation of conduct attributable to defendant which is now liable pursuant to principle of ratification for the claims that arise because of the conduct alleged herein.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 143 of the Complaint.

*Direct and Proximate Cause of Harm*

**PARAGRAPH NO. 144:**

As a direct and proximate cause of the foregoing Mrs. Lyman has suffered and will continue to suffer injury and harm for which she is entitled to compensation by the defendants.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 144 of the Complaint.

*Notice to Preserve (November 15, 2024)*

**PARAGRAPH NO. 145:**

HubSpot received a Notice to Preserve on November 15, 2024.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 145 of the Complaint.

**PARAGRAPH NO. 146:**

HubSpot preserved any and all evidence, documents, emails, and texts potentially relevant to Mrs. Lyman's claims.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 146 of the Complaint because they are

vague, subjective, and non-descript.

321392726v.2

*Request for Personnel File (November 15, 2024)*

**PARAGRAPH NO. 147:**

HubSpot received a Request for Mrs. Lyman's personnel file on November 15, 2024.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 147 of the Complaint.

**PARAGRAPH NO. 148:**

It made an initial production of documents that did not include the performance review Mrs. Lyman received just prior to her leave.

**ANSWER:**

HubSpot admits that one of Plaintiff's performance reviews was inadvertently not included in its initial production of her personnel file, which was promptly corrected. HubSpot denies the remaining allegations in Paragraph No. 148 of the Complaint.

**PARAGRAPH NO. 149:**

This review, omitted from the production, starkly contrasted with the negative review she received upon returning from leave.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 149 of the Complaint.

**PARAGRAPH NO. 150:**

Subsequently, and in response to a request, HubSpot produced it.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 150 of the Complaint.

**PARAGRAPH NO. 151:**

To date, HubSpot has produced all documents that fit within the definition of "Personnel File" pursuant to RSA 275:56 and the authorization Mrs. Lyman provided.

38

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 151 of the Complaint, with the

clarification that its investigation of this action is ongoing and it will supplement its production if

any additional documents are discovered.

## COUNT I

### DISCRIMINATION BASED ON SEX/PREGNANCY TITLE VII and ADA

**PARAGRAPH NO. 152:**

Mrs. Lyman repeats and incorporates by reference all factual allegations in this
Complaint as if set forth herein.

**ANSWER:**

HubSpot repeats and restates its responses to the paragraphs above as if fully set forth

herein.

**PARAGRAPH NO. 153:**

At all relevant times, Mrs. Lyman belonged to a protected class in that she was female
and pregnant.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 153 of the Complaint.

**PARAGRAPH NO. 154:**

She was qualified for her position and performed it in a satisfactory manner as evidenced
by the following: (a) her eight promotions, (b) her bonuses and awards, (c) her exemplary
performance reviews, (d) statements, emails, and texts by supervisors, managers, and peers
praising her work and worth ethic, and (e) the other facts herein.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 154 of the Complaint.

**PARAGRAPH NO. 155:**

HubSpot took an adverse employment action against Mrs. Lyman when it terminated her
employment after and because of her pregnancy and use of parental leave. This was disparate

321392726v.2

treatment of Mrs. Lyman from other employees both outside of her protected class and those within her protected class.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 155 of the Complaint.

**PARAGRAPH NO. 156:**

These actions were in bad faith as evidenced by the lack of review of the Parental Leave Doc during her leave, a sham performance review that referenced her team's alleged underperformance when she was out on parental leave, the draft proposed growth plan that included false statements from peer reviews, the superficial "investigation" of her complaint of retaliation, the failure of Ms. Griffith to submit the CapEx, Ms. Griffith's falsification of July 2024 CapEx to make the team's performance look worse than it actually was, the failure to complete the 360 Peer reviews, the PIP predicated on the false conclusion that Mrs. Lyman had not met growth deliverables, and the false reasons provided for her termination.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 156 of the Complaint.

**PARAGRAPH NO. 157:**

As a result of the foregoing, Mrs. Lyman suffered and continues to suffer physical and emotional harm as a proximate and direct result of defendant's action and inaction. This includes, but is not limited to, depression, anxiety, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair, tremendous public humiliation, physical conditions arising from stress, and exacerbation of physical ailments and conditions.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 157 of the Complaint.

**PARAGRAPH NO. 158:**

HubSpot was aware of false statements and false representations by Ms. Griffith and/or others as well as the retaliation against Mrs. Lyman following her return from leave. It could have and should have implemented prompt and appropriate remedial measures to stop this conduct. Instead, HubSpot chose to allow it to continue unabated thus ratifying and empowering the wrongful conduct which is, in part, why it occurred.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 158 of the Complaint.

321392726v.2

**PARAGRAPH NO. 159:**

Mrs. Lyman is entitled to and hereby demands all damages available to her by statute and otherwise for this claim including, but not limited to, compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this proceeding.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 159 of the Complaint.

## COUNT II

### DISCRIMINATION BASED ON PREGNANCY PREGNANT WORKERS FAIRNESS ACT (PWFA)

**PARAGRAPH NO. 160:**

Mrs. Lyman repeats and incorporates by reference all factual allegations in this Complaint as if set forth herein.

**ANSWER:**

HubSpot repeats and restates its responses to the paragraphs above as if fully set forth

herein.

**PARAGRAPH NO. 161:**

At all relevant times, Mrs. Lyman belonged to a protected class in that she was female and pregnant.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 161 of the Complaint.

**PARAGRAPH NO. 162:**

She was qualified for her position and performed it in a satisfactory manner as evidenced by the following: (a) her eight promotions, (b) her bonuses and awards, (c) her exemplary performance reviews, (d) statements, emails, and texts by supervisors, managers, and peers praising her work and worth ethic, and (e) the other facts herein.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 162 of the Complaint.

321392726v.2

**PARAGRAPH NO. 163:**

HubSpot took an adverse employment action against Mrs. Lyman when it terminated her employment after and because of her pregnancy and use of parental leave. This was disparate treatment of Mrs. Lyman from other employees both outside of her protected class and those within her protected class.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 163 of the Complaint.

**PARAGRAPH NO. 164:**

These actions were in bad faith as evidenced by the lack of review of the Parental Leave Doc during her leave, a sham performance review that referenced her team's alleged underperformance when she was out on parental leave, the draft proposed growth plan that included false statements from peer reviews, the superficial "investigation" of her complaint of retaliation, the failure of Ms. Griffith to submit the CapEx, Ms. Griffith's falsification of July 2024 CapEx to make the team's performance look worse than it actually was, the failure to complete the 360 Peer reviews, the PIP predicated on the false conclusion that Mrs. Lyman had not met growth deliverables, and the false reasons provided for her termination.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 164 of the Complaint.

**PARAGRAPH NO. 165:**

As a result of the foregoing, Mrs. Lyman suffered and continues to suffer physical and emotional harm as a proximate and direct result of defendant's action and inaction. This includes, but is not limited to, depression, anxiety, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair, tremendous public humiliation, physical conditions arising from stress, and exacerbation of physical ailments and conditions.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 165 of the Complaint.

**PARAGRAPH NO. 166:**

HubSpot was aware of false statements and false representations by Ms. Griffith and/or others as well as the retaliation against Mrs. Lyman following her return from leave. It could have and should have implemented prompt and appropriate remedial measures to stop this conduct. Instead, HubSpot chose to allow it to continue unabated thus ratifying and empowering the wrongful conduct which is, in part, why it occurred.

321392726v.2

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 166 of the Complaint.

**PARAGRAPH NO. 167:**

Mrs. Lyman is entitled to and hereby demands all damages available to her by statute and otherwise for this claim including, but not limited to, compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this proceeding.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 167 of the Complaint.

## COUNT III

## RETALIATION TITLE VII and RSA 354-A

**PARAGRAPH NO. 168:**

Mrs. Lyman incorporates by reference all allegations within this Complaint.

**ANSWER:**

HubSpot repeats and restates its responses to the paragraphs above as if fully set forth herein.

**PARAGRAPH NO. 169:**

As identified herein, Mrs. Lyman engaged in protected activity under Title VII and RSA 354-A by availing herself of parental leave, identifying false statements by her supervisor/manager, identifying falsification of CapEx documentation, reporting that she was being retaliated against, identifying false representations about peer reviews, and as otherwise identified herein.

**ANSWER:**

The allegations in Paragraph No. 169 comprise legal conclusions as to which no response is required, and which are deemed to be denied.

**PARAGRAPH NO. 170:**

HubSpot's actions and the actions legally attributable to it because it was conduct by direct and indirect supervisory personnel caused Mrs. Lyman's workplace to be permeated with

43

321392726v.2

retaliation, and create a hostile and abusive working environment that Mrs. Lyman reasonably believed to be in violation of Title VII and RSA 354-A.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 170 of the Complaint.

**PARAGRAPH NO. 171:**

Thereafter and as herein identified the defendant through its employees and agents retaliated against Mrs. Lyman by, inter alia, completing a sham performance review that referenced her team's alleged underperformance when she was out on parental leave, presenting a proposed growth plan that included false statements from peer reviews, conducting a superficial "investigation" of her complaint of retaliation, failing to submit the CapEx, falsifying the July 2024 CapEx to make the team's performance look worse than it actually was, failing to complete the 360 Peer reviews, providing a PIP predicated on the false conclusion that Mrs. Lyman had not met growth deliverables, and falsifying reasons for her termination.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 171 of the Complaint.

**PARAGRAPH NO. 172:**

This retaliatory conduct was causally connected to Mrs. Lyman engaging in protected activity under Title VII and RSA 354-A.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 172 of the Complaint.

**PARAGRAPH NO. 173:**

As a proximate and direct result of the retaliation perpetrated by defendant's employees and agents, and perpetuated by the Company's failure to protect Mrs. Lyman from it, Mrs. Lyman suffered and continues to suffer physical and emotional harm. This includes, but is not limited to, depression, anxiety, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair, tremendous public humiliation, physical conditions arising from stress, and exacerbation of physical ailments and conditions.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 173 of the Complaint.

321392726v.2

**PARAGRAPH NO. 174:**

Mrs. Lyman is entitled to and hereby demands all damages available to her by statute and otherwise for this claim including, but not limited to, compensatory and enhanced compensatory damages, lost wages, back pay, front pay, attorney's fees, costs, any and all other damages to which she is entitled including all interest all of which is within the jurisdictional limit of this Court.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 174 of the Complaint.

**COUNT IV**

**WRONGFUL TERMINATION**

**PARAGRAPH NO. 175:**

The plaintiff incorporates by reference all allegations within this Complaint.

**ANSWER:**

HubSpot repeats and restates its responses to the paragraphs above as if fully set forth herein.

**PARAGRAPH NO. 176:**

Defendant employed Mrs. Lyman who was an at will employee.

**ANSWER:**

HubSpot admits the allegations in Paragraph No. 176 of the Complaint.

**PARAGRAPH NO. 177:**

At all times during her employment with defendant, Mrs. Lyman performed her duties with the utmost diligence and competence.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 177 of the Complaint.

**PARAGRAPH NO. 178:**

Mrs. Lyman engaged in an act that public policy encourages when she reported conduct that she in good faith believed violated HubSpot's anti-retaliation polic(ies) as well as statutory employment law.

321392726v.2

**ANSWER:**

The allegations in Paragraph No. 178 comprise legal conclusions as to which no response is required, and which are deemed to be denied.

**PARAGRAPH NO. 179:**

The defendant terminated Mrs. Lyman's employment in bad faith, in retaliation for her reports, or with malice.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 179 of the Complaint.

**PARAGRAPH NO. 180:**

As a direct and proximate result of the foregoing, Mrs. Lyman suffered and continues to suffer physical and emotional harm. This includes, but is not limited to, depression, anxiety, mental anguish, severe distress, severe disappointment, severe anger, severe resentment, severe embarrassment, severe grief, severe indignation, severe shame, severe despair, tremendous public humiliation, physical conditions arising from stress, and exacerbation of physical ailments and conditions.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 180 of the Complaint.

**PARAGRAPH NO. 181:**

Mrs. Lyman demands and is entitled to all available damages based upon the foregoing facts arising at common law, by statute, or otherwise including, but not limited to, general tort damages, pain and suffering, back pay, front pay, compensatory, enhanced compensatory, consequential, incidental, and attorneys fees and costs all within the jurisdictional limits of this Court.

**ANSWER:**

HubSpot denies the allegations in Paragraph No. 181 of the Complaint.

## JURY DEMAND

**PARAGRAPH NO. 182:**

Plaintiff demands a jury trial on all claims so triable.

321392726v.2

**ANSWER:**

HubSpot admits that Plaintiff demands a jury trial, but HubSpot does not consent and objects to a trial by jury on any claims to which Plaintiff has not sought a trial by jury, and all other issues as to which Plaintiff is not entitled to a jury as a matter of right, as a matter of law.

### GENERAL DENIAL

Except as expressly admitted herein, HubSpot denies all allegations, express and implied, set forth in the Complaint.

### AFFIRMATIVE AND OTHER DEFENSES

In asserting these defenses, HubSpot does not assume the burden of proof on any matters for which Plaintiff rightfully bears the burden of proof.

### FIRST DEFENSE

Plaintiff's claims fail to the extent that she fails to state a claim upon which relief may be granted.

### SECOND DEFENSE

To the extent Plaintiff's claims are based on acts that allegedly occurred prior to any applicable statute of limitations, Plaintiff's claims are time-barred.

### THIRD DEFENSE

To the extent Plaintiff failed to exhaust her administrative remedies and/or failed to comply with any procedural prerequisites, prior to bringing her claims before the Court, this Court lacks subject matter jurisdiction over such claims or such claims are otherwise barred.

### FOURTH DEFENSE

To the extent Plaintiff alleges that any employee of HubSpot acted in an unlawful manner, such conduct, if it occurred, was outside the course and scope of that individual's employment, was not authorized or condoned by HubSpot, and was undertaken without the

47

knowledge or consent of HubSpot. Thus, HubSpot is not liable for any such conduct, if it occurred.

**FIFTH DEFENSE**

HubSpot avers that even if some impermissible motive was a factor in any employment decision concerning Plaintiff, a claim that HubSpot expressly denies, the same decision(s) would have been reached for legitimate business reasons.

**SIXTH DEFENSE**

Plaintiff's claims are not actionable because any employment decisions challenged were justified by legitimate, non-discriminatory, and nonretaliatory reasons.

**SEVENTH DEFENSE**

To the extent Plaintiff failed to mitigate her alleged damages, her recovery, if any, must be reduced accordingly.

**EIGHTH DEFENSE**

Subject to proof through discovery, Plaintiff's claims are barred, in whole or in part, by the doctrine of unclean hands and/or after acquired evidence.

**NINTH DEFENSE**

To the extent Plaintiff seeks punitive, multiple, liquidated, or exemplary damages, any claim for such damages is barred because HubSpot acted in good faith and with reasonable grounds for believing that its actions were lawful and in compliance with Title VII, the PWFA, New Hampshire law, and any other applicable laws, and the alleged acts or omissions of HubSpot fail to rise to the level required to sustain a claim for such damages.

**TENTH DEFENSE**

48

321392726v.2

If Plaintiff has sustained any damages, although such is not admitted hereby or herein and is specifically denied, HubSpot is entitled under the equitable doctrine of setoff and/or recoupment to offset all compensation or other appropriate amounts against any judgment that may be entered against HubSpot.

## ELEVENTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because HubSpot exercised reasonable care to prevent and promptly correct any discriminatory or retaliatory behavior, and Plaintiff unreasonably failed to take advantage of any preventative or corrective opportunities.

## TWELFTH DEFENSE

Without conceding that Plaintiff suffered any discrimination, retaliation, or damages, Plaintiff's claims are barred or her damages, if any, are limited because her employer published policies against discrimination and retaliation, acted reasonably to prevent discrimination and retaliation, and Plaintiff unreasonably failed to take advantage of the policies or accommodations, or to avoid harm otherwise.

## THIRTEENTH DEFENSE

To the extent Plaintiff seeks recovery for alleged physical and/or emotional injury, such recovery is barred by the New Hampshire Workers' Compensation Law, which provides the exclusive remedy for these alleged injuries.

## RESERVATION OF RIGHTS

HubSpot's investigation is ongoing and there has been no formal discovery in this matter. HubSpot reserves its right to amend its responses and raise additional defenses as may be discovered during the course of these proceedings.

DATED:  November 6, 2025           Respectfully submitted,

HUBSPOT, INC.,

By its attorneys:

*/s/ Hillary J. Massey*

Hillary J. Massey
hmassey@seyfarth.com
SEYFARTH SHAW LLP
Seaport East
Two Seaport Lane, Suite 1200
Boston, Massachusetts 02210
Telephone: (617) 946-4800
Facsimile: (617) 946-4801

Christina F. Meddin, *pro hac anticipated*
cmeddin@seyfarth.com
SEYFARTH SHAW LLP
1075 Peachtree Street, N.E.
Suite 2500
Atlanta, GA  30309-3958
Telephone: (404) 885-1500
Facsimile: (404) 892-7056

50

321392726v.2

51

## CERTIFICATE OF SERVICE

I hereby certify that on November 6, 2025, a copy of the foregoing document was filed electronically through the Court's ECF system.

*/s/ Hillary J. Massey*
Hillary J. Massey

321392726v.2